# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID MATTHEW HOWELL,<br><br>Defendant. | No. CR07-2013-MWB<br><br>**AMENDED**<br>**REPORT AND RECOMMENDATION**<br>**ON MOTION TO DISMISS** |

———————————

In this case, the defendant David Matthew Howell is charged with failing to register as a sex offender, and to keep his registration current, as required by the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.* and 18 U.S.C. § 2250(a). On October 1, 2007, Howell filed a motion to dismiss Counts 1 and 2 of the Superseding Indictment on various grounds. Doc. No. 18. The trial management order assigned motions to dismiss in this case to the undersigned for review and the filing of a report and recommended disposition. *See* Doc. No. 7. Howell has filed a brief in support of his motion. Doc. No. 18-2. The plaintiff (the "Government") has filed a resistance, Doc. No. 22. The matter is now fully briefed and ready for consideration.

### *Factual and Procedural Background*

On December 28, 1987, a Michigan state court sentenced Howell to serve three to fifteen years in prison after he pled guilty to one count of third degree criminal sexual conduct in violation of Michigan law. Pursuant to Michigan's Sex Offenders Registration Act, Michigan Compiled Laws § 28.721 *et seq.*, Howell's registration as a convicted sex offender was to be accomplished prior to December 31, 1995, by the Michigan Department of Corrections. *See* Mich. Comp. Laws § 28.724(2)(c). Howell states his initial registration was completed on November 10, 1995, while he was incarcerated in Michigan.

*See* Doc. No. 18-2 at 3. The Michigan Act contains additional requirements for Howell's registration as a convicted sex offender both before and after his release from prison. Among other things, pursuant to the Act, Howell was required to keep his registration current for the longer of twenty-five years after his initial registration date or ten years after his release from prison. Mich. Comp. Laws § 28.725(7). In addition, the Act required Howell to notify the State at least ten days before moving to another State, whereupon the State of Michigan would promptly notify the appropriate authorities in Howell's new state of domicile or residence. Mich. Comp. Laws § 28.725(4).

Howell's sentence was discharged on August 2, 2002. According to Howell, he completed and signed a registration form in Michigan on August 9, 2005, "apparently in connection with a conviction for failure to register, habitual offender/second offense[.]"[1] Doc. No. 18-2 at 3. However, it appears Howell did not enter a guilty plea to the charge until August 25, 2005. *See* Doc. No. 2-4, ¶ 2, in 07mj154 (Affidavit in support of Criminal Complaint). According to the Government, Howell absconded from supervision in Michigan on September 6, 2005. *Id.* Also according to the Government, a Michigan warrant was issued for Howell's arrest "for violating the terms of his probation by failing to register as a sex offender in Michigan." *Id.*

At some point after SORNA's enactment on July 27, 2006, Howell moved to the State of Iowa, but he failed to notify Michigan authorities as required by Michigan law, and he also failed to register as a convicted sex offender as required by Iowa law. *See* Iowa Code §§ 692A.1 *et seq.* On May 24, 2007, law enforcement in Oelwein, Iowa,

---

[1] In his brief, Howell indicates he has been unable to locate any record of a "first offense" for failure to register in Michigan, and he suggests "the phrases 'habitual offender' and 'second offense' may refer to the number of felony convictions on a person's record, and not to a second or subsequent charge specifically for failure to register." Doc. No. 18-2 at 3 n.1. The statute under which Howell was convicted, Michigan Compiled Laws § 28.729(b), indicates otherwise, specifying the penalty for persons who have a "prior conviction for a violation of this act"; i.e., the Sex Offenders Registration Act. In any event, the exact nature of the Michigan charge to which Howell pled guilty is not relevant to the present motion.

2

responded to a domestic disturbance call at a residence. Though not a party to the disturbance, Howell was present at the scene. According to the Government, Howell told officers he had been living in Oelwein since January 2007. Officers ran a warrant check and discovered an outstanding Michigan warrant for Howell's arrest for failure to comply with the Michigan Sex Offenders Registration Act. When officers asked Howell if he had registered in Iowa, Howell allegedly responded that he had tried to register but was told he did not need to do so. He also allegedly "claimed he actually lived in Texas, and that he had registered in Texas as a sex offender. Howell later said he was a truck driver, and because of this job, he was registered as a sex offender in Texas, Michigan, Missouri and Arkansas." Doc. No. 2-4 in 07mj154, ¶ 4. Howell was arrested and transported to the Fayette County, Iowa, jail. The State of Michigan apparently was unwilling to extradite Howell on the outstanding warrant, *see* Doc. No. 18-2 at 4, and Howell was released from custody on June 5, 2007. The same day, Howell registered as a sex offender with the State of Iowa.

On June 28, 2007, a sealed Criminal Complaint was filed against Howell alleging he had failed to register as a sex offender as required by the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 *et seq.*, and citing the applicable penalty provision, 18 U.S.C. § 2250.[2] A warrant was issued for Howell's arrest on the Complaint. On July 9, 2007, a Trial Information was filed in Fayette County, Iowa, charging Howell in the state court with failure to register as required by Iowa law. Howell was arrested on the federal warrant on July 13, 2007, in the Southern District of Texas. On July 16, 2007, Howell made an initial appearance in the Southern District of Texas. He waived an identity and detention hearing, and was transferred to the Northern District of Iowa.

---

[2]An Amended Complaint was filed on June 28, 2007, apparently for the purpose of providing a redacted copy of the Affidavit for the public record. *Compare* Doc. No. 2-4 *with* Doc. No. 7 in 07mj154.

3

On July 18, 2007, the grand jury returned an Indictment charging Howell with one count of knowingly failing to register and update his registration as a sex offender as required by SORNA "[b]etween about January 2007 and continuing through at least May 24, 2007." Doc. No. 1. Howell made his initial appearance in this court and was arraigned on the Indictment on August 7, 2007. On August 30, 2007, the grand jury returned a Superseding Indictment that added a second charge of knowingly failing to register and update his registration as a sex offender as required by SORNA "[b]etween about June 6, 2007 and about July 13, 2007[.]" Doc. No. 12. Howell was arraigned on the Superseding Indictment on September 5, 2007.

After receiving an extension of time to file pretrial motions, *see* Doc. No. 16, Howell filed the instant motion to dismiss the Superseding Indictment on October 1, 2007. Howell's motion focuses on the constitutionality of SORNA as applied to sex offenders with convictions predating the statute's enactment, as well as proper venue for the prosecution of Count 2 of the Superseding Indictment.

### *Chronology Applicable to Howell's Motion to Dismiss*

The parties are in agreement about the basic chronology relevant to the court's consideration of Howell's motion to dismiss. In addition, solely for purposes of Howell's motion to dismiss, the court will assume Howell failed to notify the State of Michigan when he moved to Iowa; he failed to register in Iowa prior to June 5, 2007; he was arrested in Texas on July 13, 2007; and he did not register as a sex offender in Texas at any time prior to his arrest. Thus, the following chronology must be kept in mind when considering the issues raised by Howell in his motion:

| | |
|---|---|
| December 28, 1987 | Howell was convicted of a sex offense in Michigan |
| August 2, 2002 | Howell's sentence on the 1987 conviction was discharged |

4

| | |
|---|---|
| August 9, 2005 | Howell completed and signed a sex offender registration form in Michigan |
| August 25, 2005 | Howell pled guilty to violating Michigan's Sex Offenders Registration Act |
| July 27, 2006 | SORNA was enacted |
| After July 27, 2006, but before February 28, 2007 | Howell moved from Michigan to Iowa, without notifying Michigan authorities, and without registering in Iowa |
| February 28, 2007 | The Attorney General promulgated an "interim rule" (discussed below) making SORNA applicable to persons with pre-SORNA sex offense convictions |
| May 24, 2007 | Howell had contact with Iowa law enforcement, and was arrested on an outstanding Michigan warrant for failure to register in Michigan |
| June 5, 2007 | When Michigan declined to extradite, Howell was released from custody and registered as a sex offender in Iowa |
| July 13, 2007 | Howell was arrested in Texas |
| July 18, 2007 | Howell was indicted for failure to register under SORNA for the period from January 2007, to May 24, 2007 |
| August 30, 2007 | An additional charge was added in a Superseding Indictment, charging Howell with failure to register under SORNA for the period from June 6, 2007, to July 13, 2007 |

### *The Sex Offender Registration and Notification Act (SORNA)*

On July 27, 2006, Congress enacted SORNA to "establish[] a comprehensive national system for the registration of [sex offenders and offenders against children]." 42

5

U.S.C. § 16901. The Act requires "[e]ach jurisdiction [to] maintain a jurisdiction-wide sex offender registry[.]" 42 U.S.C. § 16912.

The registration requirements for sex offenders are specified in section 16913 of the Act:

> (a) In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> (b) Initial registration
>
> The sex offender shall initially register --
>
>> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>>
>> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
>
> (c) Keeping the registration current
>
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
>
> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section
>
> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation

6

in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

Congress concurrently made it a crime to fail to comply with the registration requirements of section 16913. In pertinent part, the criminal penalty provision provides as follows:

(a) In general.--Whoever–

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). Prior to the enactment of section 2250 on July 27, 2006, no federal criminal liability existed for an individual who violated a state "Megan's Law" requiring sex offender registration. *See United States v. Kapp*, 487 F Supp. 2d 536, 538-39 (M.D.

7

Pa. 2007) (discussing legislative history of SORNA and its predecessor, the Jacob Wetterling Act); 42 U.S.C. § 14701(d) (providing that a person who fails to register as required under any State "Megan's law" is "subject to criminal penalties in any State in which the person has so failed").

On February 28, 2007, the Attorney General promulgated an interim rule pursuant to 42 U.S.C. § 16913(d), set forth above, making SORNA's requirements applicable "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3 (the "interim rule").

Discussion of Howell's motion will be facilitated by first examining the elements the Government must prove to convict Howell under 18 U.S.C. § 2250. Howell must have (1) been required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required by SORNA. At first blush, it would seem application of these elements to Howell's activities charged in the Superseding Indictment should be a simple matter. There is no dispute that Howell is a convicted sex offender, and SORNA requires all sex offenders to register. *See* 42 U.S.C. § 16913(a). Nor is there any dispute that Howell traveled in interstate commerce, first from Michigan to Iowa and then from Iowa to Texas, and he thereafter failed to register or update his registration as a sex offender. However, Howell argues application of the statute to him is not as easy as it seems. In his motion, he raises challenges regarding SORNA's effective date as applied to him; whether application of 18 U.S.C. § 2250 to him would violate the *Ex Post Facto* Clause of the Constitution; whether Congress impermissibly delegated legislative power to the Attorney General in 42 U.S.C. § 16913(d); whether application of 18 U.S.C. § 2250 to him would violate his right to due process; and whether SORNA's registration requirements and criminal penalties constitute an invalid exercise of congressional authority under the Commerce Clause. Howell also argues venue is improper in this court as to Count 2 of the Superseding Indictment.

8

Notably, numerous federal courts across the country have considered arguments identical to those asserted by Howell in this case. As discussed below in this opinion, the courts have reached diverse conclusions. To date, no circuit court of appeals has addressed the applicability or constitutionality of SORNA.

### *Howell's Arguments*

### 1. *Effective Date of SORNA as Applied to Howell*

Count 1 of the Superseding Indictment charges that "[b]etween about January 2007 and continuing through at least May 24, 2007," Howell was required to register as a sex offender pursuant to SORNA; he traveled in interstate commerce; and he knowingly failed to register and update his registration as required by SORNA. Doc. No. 12. As noted above, at first glance, it would appear the Government would have no difficulty proving these three elements. However, Howell challenges the portion of the criminal statute that requires his registration "pursuant to SORNA." He argues SORNA does not apply to the conduct described in Count 1 because he was convicted of a sex offense prior to SORNA's enactment, and his travel in interstate commerce relating to Count 1 occurred prior to the Attorney General's promulgation of the interim rule. *See* Doc. No. 18-2 at 7-8, 10-12. Howell argues that prior to the interim rule, "SORNA had only prospective application." *Id.* at 8.

Howell relies on 42 U.S.C. § 16913(d), which confers on the Attorney General "the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and or other categories of sex offenders who are unable to comply with [the "initial registration" provisions set forth in subsection (b) of section 16913]." Howell argues that as a result of subsection (d),

9

SORNA's registration provisions did not apply to him at any time prior to the Attorney General's issuance of the interim rule on February 28, 2007.

The Government disagrees, arguing "a criminal statute duly enacted by Congress [does not] sit[] moribund until the Attorney General issues regulations." Doc. No. 22-2 at 7. Further, the Government argues 42 U.S.C. § 16913(d), which prompted issuance of the interim rule, is inapplicable to Howell in any event because he "both could and did register as a convicted sex offender prior to his move to Iowa, and [he] faced no barrier to registering after moving to Iowa." *Id.* The Government argues that because Howell "did not fall into the narrow class of individuals unable to register as a sex offender prior to SORNA's enactment, the Act became effective as to him at the time of its enactment on July 27, 2006." *Id.* at 9; *see id.* at 7-9.

The question here, therefore, is whether Congress's grant of authority to the Attorney General in subsection (d) to specify the applicability of SORNA's registration requirements to those with pre-SORNA convictions means that until the Attorney General issued the interim rule on February 28, 2007, SORNA did not apply to such individuals. Numerous federal district courts have considered this issue since promulgation of the interim rule, reaching conflicting conclusions. A sampling of the relevant decisions may prove useful in evaluating Howell's arguments here.

On February 7, 2007, the Western District of Oklahoma considered the applicability of SORNA to defendants with pre-SORNA convictions in *United States v. Templeton*, 2007 WL 445481, slip op., at *4 (W.D. Okla. Feb. 7, 2007). The *Templeton* court noted the Attorney General had not yet promulgated rules relating to the retroactivity of SORNA, but found this fact to be irrelevant to a defendant who was able to register initially as a sex offender in his state of residence. In *Templeton*, the defendant had registered as a sex offender in Arizona prior to the enactment of SORNA, and "he faced no barrier to registering in Oklahoma upon becoming a resident." *Id.* The court therefore found 42

10

U.S.C. § 16913(d) to be inapplicable to the defendant. *Id.* Notably, however, the *Templeton* court based its conclusion on the title to subsection (d) -- "Initial registration of sex offenders unable to comply with subsection (b) of this section" -- without first determining that the statutory language was ambiguous. *Id.* Another court found this approach to be erroneous under accepted rules of statutory construction. *See United States v. Muzio*, 2007 WL 2159462, slip op. at *4-5 (E.D. Mo. July 26, 2007).

On February 23, 2007, the Western District of Arkansas decided *United States v. Manning*, 2007 WL 624037, slip op. (W.D. Ark. Feb. 23, 2007), in which the court held SORNA, by its terms, required a convicted sex offender to register not only as required by SORNA, but also as required by "registration obligations as imposed by other laws." *Id.* at *2. Thus, the court held that because Manning was required to register by virtue of the laws of his state of residence, failure to comply with those laws also constituted a violation of SORNA, regardless of whether the failure to register occurred before or after SORNA's enactment. *Id.*

On May 12, 2007, the Western District of Virginia decided *United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007), denying the defendant's motion to dismiss on grounds similar to those Howell raises here. Hinen argued "he was not required to register under SORNA because the Attorney General had not adopted the rule delegated in § 16913(d) until after the dates alleged in the indictment." *Hinen*, 487 F. Supp. 2d at 750. The court disagreed, holding as follows:

> The plain language of SORNA requires an offender to register, without regard to any construction of the statute by the Attorney General. The delegation provision of the statute refers to persons who, prior to the enactment of SORNA's revised standards, were not required to register by their state's registration law. *See United States v. Templeton,* No. CR-06-291-M, 2007 WL 445481, at *4 (W.D. Okla. Feb.7, 2007) (holding that § 16913(d) only applies to individuals who were unable to initially register and not to a defendant who was able

11

to register under his state's pre-SORNA law); *see also United States v. Manning,* No. 06-20055, 2007 WL 624037, at *2 (W.D. Ark. Feb.23, 2007) ("A defendant can violate the law by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law."). Thus, the Attorney General's rule makes no difference as to the present case, as long as the government can prove that the defendant was required to register or update his registration under the existing state law of his residence. FN3

> FN3. As the Attorney General noted in his explanation of the interim rule, § 16913(d) applies, for example, to the case of an offender who was convicted of, and sentenced to probation for, a sex offense within the categories for which SORNA requires registration prior to the enactment of SORNA, but who did not register near the time of his sentencing because the offense in question was not subject to a registration requirement under federal law or applicable state law at the time. 72 Fed. Reg. 8894, 8896 (Feb. 28, 2006). The Attorney General has not yet adopted a rule governing this example. *Id.*

*Hinen*, 487 F. Supp. at 750-751.

In *United States v. Kapp*, 487 F. Supp. 2d 536 (M.D. Pa. 2007), decided on May 16, 2007, the court held SORNA did not apply to two defendants who were indicted in November and December 2006, inside "the brief window during which SORNA's scope remained undefined as to past offenders"; *i.e.*, between SORNA's enactment and the time the Attorney General "animate[d] SORNA's provisions to previously convicted offenders[.]" *Id.*, 487 F. Supp. 2d at 542. The court noted, however, that once the Attorney General acted under section 113(d), "there is no doubt that SORNA's registry requirements, and the punishment that accompanies failure to fulfill such requirements, would apply under 18 U.S.C. § 2250." *Id.*, 487 F. Supp. 2d at 543.

12

In *United States v. Muzio*, the defendant moved to dismiss the indictment against him on grounds similar to Howell's arguments here. A U.S. Magistrate Judge recommended the motion be denied, finding the defendant was required to register as a sex offender under Oklahoma law and had done so, and when the defendant then moved to Missouri, he "faced no impediment to registration in Missouri under the then-existing state law which had been in effect for at least ten years[.]" *United States v. Muzio*, 2007 WL 1629836, slip op. at *3 (E.D. Mo. June 4, 2007) (Adelman, M.J.). However, the district court overruled the Magistrate Judge's recommendation, finding that under SORNA's plain language, section 113(a)'s registration requirement had "only prospective application" until the Attorney General issued the interim rule. *United States v. Muzio*, 2007 WL 2159462, slip op. at *3 (E.D. Mo. July 26, 2007) (Perry, J.).

The *Muzio* court noted several courts that had held otherwise had done so improperly based on the *title* of section 113(d), without first finding the statutory language was ambiguous -- a result the *Muzio* court found to be "exactly the type of statutory construction that the Supreme Court has said is improper." *Id.* at *4-5. The court held "a title does not make a statute ambiguous when the words are plain: 'section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity.'" *Id.* (quoting *Minnesota Transp. Regulation Board v. United States*, 966 F.2d 335, 339 (8th Cir. 1992); citations omitted). Thus, the court found:

> Because the title, "Initial registration of sex offenders unable to comply with subsection (b) of this section," is not part of the statute, it was error for Judge Adelman and for the *Hinen*, *Templeton* and *Manning* courts to rely on it as evidence that SORNA applied to sex offenders convicted before July 27, 2006 when it was passed. Instead, I am persuaded by the reasoning of the Middle District of Pennsylvania in *United States v. Kapp*. . . . Like the *Kapp* court, I can find no ambiguity in the statutory language at issue and am bound to apply the law as written, without regard to the subsection's title. 2/ For this reason, I find that SORNA did not apply to

13

Muzio *at the time of travel* charged in the indictment. *Accord Marvin Smith*, 2007 WL 1725329 at *4 (finding further support for this conclusion in the Department of Justice Guidelines that have now been proposed).

> FN2. For the same reason, I cannot rely on the legislative history cited by the government, as a court should only look to legislative history to help interpret an ambiguous statute. In any event, the legislative history does not support the government's argument because it does not speak at all about the subsection in question or about retrospective application – instead it simply talks about the problem to be addressed by the statute. In this regard the statute is no different than any other criminal law passed by Congress that addresses an emerging or recently recognized societal problem. Recognition that the problem existed before its criminalization is the norm; retroactivity – unless explicitly stated – is not the norm.

*Id.* at *4.

The Southern District of New York, in *United States v. Barnes*, 2007 WL 2119895, slip op. (S.D.N.Y. July 23, 2007), rejected the government's contention "that SORNA is essentially an empty vessel that does nothing to alter the state laws of registration." *Id.* at *3. The government argued that because the defendant knew of his registration requirements under state law, "he was therefore on notice that he would have to register under SORNA, because SORNA . . . adds nothing to the existing state requirement." *Id.* The court noted the applicable state laws would have given the defendant ten days to register when he moved, with his failure to do so being a misdemeanor. The court observed that SORNA's felony penalties are far greater. In addition, the *Barnes* court noted SORNA, itself, requires the Attorney General not only to determine which sex offenders are covered; it "also provides that the Attorney General has the duty to notify

14

sex offenders of their registration requirements." *Id.* at *4 (citing 42 U.S.C. § 16917[3]). Because Barnes had been arrested on the exact date the interim rule was issued, the court found that although the defendant was aware his conduct violated state law, he could not have received adequate notice and fair warning that his conduct "was proscribed under federal law with the result being stiffer penalties for the same behavior." *Id.* at *5. The court noted, "The Constitutional mandate that defendants be given adequate notice and fair warning applies not only to what conduct is criminal but to the punishment which may be imposed." *Id.* (citation omitted). Notably, the *Barnes* court strictly limited its ruling to those specific circumstances where a defendant was arrested "on the exact date it became clear that SORNA would be applied to him." *Id.* at *6.

In *United States v. Roberts*, 2007 WL 2155750, slip op (W.D. Va. July 27, 2007), a case decided one day after *Muzio*, the Western District of Virginia held SORNA applied to a defendant who was convicted prior to the statute's enactment. The defendant was convicted in 1994, and he was required to, and did, register with the state pursuant to Virginia law. In the fall of 2006, he moved to North Carolina, and failed to inform authorities in either Virginia or North Carolina of his new residence. The court held subsection (b) of SORNA, requiring a sex offender to "initially register," was not applicable to the defendant whose "initial" registration had occurred years earlier. Consequently, subsection (d), in which the Attorney General is given authority to specify SORNA's applicability to "sex offenders who are unable to comply with subsection (b)," also would not apply to the defendant. The court noted the context of the statute makes it clear that Congress never intended "to exempt all sex offenders convicted before July

---

[3]Section 16917 provides for notification to sex offenders of SORNA's requirements either before they are released from custody or immediately after their sentencing. 42 U.S.C. § 16917(a). The statute further provides that the Attorney General must prescribe rules for the notification of sex offenders who cannot be notified either prior to their release from custody or immediately after their sentencing. 42 U.S.C. § 16917(b).

15

2006 from registration requirements, but rather [intended] to avoid the obvious injustice of requiring such offenders to do the impossible by registering within 3 days of their years-old convictions." *Roberts*, 2007 WL 2155750 at *2. The court found this conclusion to be bolstered by SORNA's legislative history, which indicates the intent of the statute "was to improve the registration and tracking of existing known sex offenders, not merely those who might be convicted after the effective date." *Id.*

In response to Roberts's argument that application of SORNA to him would violate his right to due process because he was not notified of SORNA's requirements, the court held as follows:

> Defendant claims he was denied due process because he received no notification of SORNA's requirements. This amounts to a claim that ignorance of the law excuses non-compliance. Unsurprisingly, Defendant cites no authority for this proposition, which is at odds with centuries of Anglo-American jurisprudence. Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected [to] keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation. *See, e.g. United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (knowledge that firearm ownership was prohibited not necessary to sustain conviction under 18 U.S.C. § 922(g)). Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.

*Id.*

In *United States v. Heriot*, 2007 WL 2199516, slip op. (D.S.C. July 27, 2007), the court held a sex offender's federal obligation to register as required by SORNA "did not arise until February 28, 2007, when the Attorney General determined that sex offenders

16

who had been convicted prior to July 27, 2006 were subject to the provisions of the Act." *Id.* at *2. Similarly, on September 7, 2007, the District of South Carolina held that although a defendant convicted pre-SORNA may have had a state obligation to register, no federal obligation to register as a sex offender existed until the Attorney General's issuance of the interim rule on February 28, 2007. *United States .v Dillenbeck*, 2007 WL 2684838, slip op. (D.S.C. Sept. 7, 2007).

In *United States v. Deese*, 2007 WL 2778362, slip op. (W.D. Okla. Sept. 21, 2007), the court granted the defendant's motion to dismiss an indictment where the defendant's interstate travel occurred two years before SORNA was enacted. Among other things, the court held, "A plain reading of [SORNA] indicates that until the Attorney General acted, the registration requirements of SORNA did not apply to persons convicted before July 26, 2006." *Id.* at *2.

In *United States v. Patterson*, 2007 WL 2904099, slip op. (D. Neb. Sept. 21, 2007) (Gossett, M.J.), a U.S. Magistrate Judge recommended an indictment be dismissed where the defendant's travel occurred during time period between SORNA's enactment and issuance of the interim rule. The court found *Muzio*, *Kapp*, and *United States v. Stinson*, ___ F. Supp. 2d ___, 2007 WL 2580464 (S.D. W. Va. Sept. 7, 2007), "to be the most logical and persuasive." *Id.* at *5. The court held that although Patterson may have been obligated by state law or prior federal law to register during the time period alleged in the indictment, "the registration requirements of SORNA did not apply to defendant Patterson until the Attorney General made the necessary specification on February 28, 2007." *Id.* at *7.[4]

The District of North Dakota found the *Roberts* court's reasoning persuasive in holding SORNA did not violate a defendant's due process rights in *United States v.*

---

[4]The undersigned notes the Government has filed objections to the Magistrate Judge's recommendation in *Patterson*, and as of the time this opinion is filed, the district court has not issued a final ruling on Patterson's motion to dismiss.

Case 6:07-cr-02013-MWB   Document 28   Filed 11/08/07   Page 17 of 38

*Lovejoy*, ___ F. Supp. 2d ___, 2007 WL 2812681 (D.N.D. Sept. 28, 2007). The defendant registered as a sex offender in Bismarck, North Dakota, in January 2006. When he moved to New Town, North Dakota, in March 2007, he failed to update his registration as required by North Dakota law. The defendant argued he had not been given adequate notice that his conduct would violate SORNA. The court noted the defendant's criminal conduct at issue had occurred after SORNA's enactment and after issuance of the interim rule. The court further held, "Even if the sex offender registration requirements under SORNA were unclear prior to the issuance of the interim rule on February 28, 2007, Lovejoy had sufficient time between February 28, 2007, and June 2007, to apprise himself of the new federal registration requirements." *Lovejoy*, 2007 WL 2812681 at *5.

On October 10, 2007, the Northern District of Florida held "that if a person is a sex offender and is required to register as such, then SORNA became applicable to him or her on July 27, 2006, when it was enacted by Congress and signed into law by the President, not on February 28, 2007, when it was declared officially retroactive by the Attorney General." *United States v. Ambert*, 2007 WL 2949476, slip op. at *3 (N.D. Fla. Oct. 10, 2007). The court found Ambert "initially registered in California and faced no obstacle to registering in Florida upon becoming a resident." *Id.* at *2. Thus, the court held SORNA did not violate the defendant's due process rights, nor was the indictment deficient in failing to specify that the defendant had traveled in interstate commerce after February 28, 2007. *Id.* at *2-4.

Most recently, the District of Utah noted the Attorney General did not make SORNA retroactive until seven months after its enactment. As a result, the court held, SORNA's registration requirements did not apply to a defendant convicted prior to SORNA's enactment until the Attorney General's issuance of the interim rule. *United States v. Gill*, ___ F. Supp. 2d ___, 2007 WL 3018909 (D. Utah Oct. 15, 2007).

18

The cases digested here represent only a sampling of the numerous cases decided since the interim rule was issued on February 28, 2007. Other courts also have grappled with similar issues. *See, e.g.*, *United States v. May*, 2007 WL 2790388, slip op. (S.D. Iowa Sept. 24, 2007) (Gritzner, J.) (denying motions to dismiss; finding defendants knew of their continuing obligation to keep their registrations current under state law, and the fact that they traveled in interstate commerce during the "gap" period between SORNA's enactment and the interim rule was of no consequence); *United States v. Sawn*, 2007 WL 2344980, slip op. (W.D. Va. Aug. 15, 2007) (denying motion to dismiss; similar reasoning to *Hinen* and *Roberts*); *United States v. Mitchell*, 2007 WL 2609784, slip op. (W.D. Ark. Sept. 6, 2007) (denying motion to dismiss; holding, "A defendant can violate the law by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law."); *United States v. Smith*, 2007 WL 1725329, slip op. (S.D. W. Va. June 13, 2007) (dismissing indictment; finding SORNA was not retroactive on its face, and did not impose retroactive registration requirements until promulgation of the interim rule; noting Justice Department's SORNA Guidelines indicate sex offenders not informed of SORNA's requirements at time of sentencing or release from custody must "be given new instructions about [their] duties under SORNA." Citing Guidelines, Part IX, http://www.ojp.usdoj.gov/smart/ proposed.htm, as of June 13, 2007).

The above review of the case law illustrates the courts' difficulty in interpreting SORNA and the interim rule. SORNA's legislative history indicates Congress intended to create a sex offender registration system that would allow sex offenders to be tracked when they move from state to state. Within the Act, Congress delegated to the Attorney General the authority to determine how SORNA's registration requirements would apply to sex offenders convicted before SORNA's enactment, and to those who are unable to register initially either prior to completion of their sentence or within three days after their

Case 6:07-cr-02013-MWB   Document 28   Filed 11/08/07   Page 19 of 38

sentencing if they are not imprisoned. *See* 42 U.S.C. § 16913(d). Congress further charged the Attorney General with the duty to prescribe rules for the notification of sex offenders who could not be registered shortly before their release from custody or immediately after their sentencing. *See* 42 U.S.C. § 16917(b). By issuing the interim rule, the Attorney General has accomplished the first of these tasks, specifying that SORNA is applicable "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3. The second task, determining how certain sex offenders must be notified of SORNA's requirements, has not yet been addressed fully by the Attorney General.

The issue before the court here, in connection with Howell's first argument, is a determination of the date on which SORNA became *applicable* to defendants with pre-SORNA convictions, including those who traveled in interstate commerce without registering or updating their registrations during the time period between SORNA's enactment and promulgation of the interim rule.

The undersigned finds SORNA was *effective* when enacted as to all convicted sex offenders, requiring them to register and to update their registration as specified by SORNA. However, the court finds SORNA was not *applicable* to sex offenders convicted prior to SORNA's enactment until the Attorney General issued the interim rule on February 28, 2007. In a single section of SORNA, sex offenders are directed to register and to update their registrations, and then they are told the Attorney General will specify how the registration requirements will apply to those with pre-SORNA convictions. The court finds a reasonable reading of the statute leads to the conclusion that SORNA did not apply to persons with pre-SORNA convictions until the Attorney General issued the interim rule.

The court rejects the Government's argument that subsection (d) is inapplicable to Howell and others in similar circumstances. Subsection (d) charges the Attorney General

20

with the duty to specify how "this subchapter" will apply to those with pre-SORNA convictions. "This subchapter" refers to Title 42, Chapter 151, Subchapter I of the United States Code, which encompasses the totality of the sex offender registration and notification requirements under SORNA. Under a plain reading of the statute, subsection (d) of section 16913 includes two separate classes of sex offenders as to which the Attorney General must formulate regulations: sex offenders "convicted before July 27, 2006 or its implementation in a particular jurisdiction[5], and "other categories of sex offenders who are unable to comply with subsection (b)"; i.e., the "initial registration" provisions. Howell falls into the first of these two classes as to whom the Attorney General had to specify the applicability of the Act. Until February 28, 2007, when the interim rule was issued, nothing in the Act specified whether SORNA would apply to sex offenders convicted prior to the SORNA's enactment.

Significantly, however, the court's conclusion that SORNA did not apply to Howell until February 28, 2007, does not mandate dismissal of Count 1 of the Superseding Indictment. As the Eighth Circuit Court of Appeals explained in *United States v. Cuervo*, 354 F.3d 969 (8th Cir. 2004):

> "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *see [United States v.] Dolan*, 120 F.3d [856,] 864 [(8th Cir. 1997)] ("To be sufficient, an indictment must fairly inform the

---

[5]The language in subsection (d), "or its implementation in a particular jurisdiction," creates an entirely different set of difficulties for courts attempting to apply the statute to individual defendants. SORNA sets a general time frame of three years for jurisdictions to comply with the statute, and the Attorney General can grant up to two one-year extensions. *See* 42 U.S.C. § 16924. Thus, some jurisdictions may not implement SORNA until 2012. However, because Howell has made no argument relating to the date of SORNA's implementation in any particular jurisdiction, the court leaves such an analysis to another day.

21

> defendant of the charges against him and allow him to plead
> double jeopardy as a bar to future prosecution."). Typically
> an indictment is not sufficient only if an essential element of
> the offense is omitted from it. *[United States v.] White*, 241
> F.3d [1015,] 1021 [(8th Cir. 2001)].

*Cuervo*, 354 F.3d at 983. *See Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609, 140 L. Ed. 2d 828 (1998) ("[T]he first and most universally recognized requirement of due process" is that a defendant receive "real notice of the true nature of the charge against him.") (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L. Ed. 859 (1941)).

Count 1 of the Superseding Indictment in this case charges Howell with conduct that both predates and postdates issuance of the interim rule. Any defect in the time frame of Howell's alleged violation of SORNA can be remedied by a bill of particulars. "While a bill of particulars cannot save an otherwise invalid indictment, it can cure deficiencies as to form." *United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir. 1985) (citing, *inter alia*, *Russell v. United States*, 369 U.S. 749, 770, 82 S. Ct. 1038, 1050, 8 L. Ed. 2d 240 (1962)). In addition, the trial court can restrict the Government's proof to the time frame post-dating issuance of the interim rule. *Id.* *See Roberts*, 2007 WL 2155750 at *3 (section 2250 "forbids failure to register *after having crossed* state lines"; emphasis in original). Count 1 of the Superseding Indictment is sufficient to inform Howell of the charges against him. It tracks the language of the statute and sets forth Howell's specific actions that are alleged to constitute the offense. *Id.*; *Cuervo*, *supra*.

2. ***Ex Post Facto Clause Challenge***

Howell argues that applying 18 U.S.C. § 2250 to him for the conduct alleged in Count I of the Superseding Indictment would violate the *ex post facto* clause of the United States Constitution. *See* Doc. No. 18-2, pp. 8-10. The Government disagrees. *See* Doc. No. 22-2, pp. 10-13.

22

Notably, it is not the registration requirements themselves Howell challenges, nor would such an argument carry the day in light of the Supreme Court's holding in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (holding an Alaska registration statute with requirements similar to SORNA's did not violate the *Ex Post Facto* Clause, finding registration requirements to be regulatory rather than punitive). Rather, Howell argues the *Smith* Court did not reach the issue he raises here, relating to the enhanced criminal penalties applied to persons who traveled in interstate commerce prior to issuance of the interim rule. Instead, Howell argues the *Smith* Court only ruled on the constitutionality of the registration requirements. *See* Doc. No. 18-2 at 9.

The United States Supreme Court has explained the *ex post facto* doctrine as follows:

> The *ex post facto* prohibition forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." . . . Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. . . . The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. . . .
>
> In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. . . . Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

23

*Weaver v. Graham*, 450 U.S. 24, 28-31, 101 S. Ct. 960, 964-65, 67 L. Ed. 2d 17 (1981) (footnotes, internal citations omitted).

Most of the courts that have considered the effective date of SORNA as to defendants with pre-SORNA convictions also have considered the defendants' arguments that application of SORNA to them constituted an unconstitutional *ex post facto* application of the law. Similarly to their treatment of the effective date arguments, the courts have reached conflicting conclusions. **Compare, e.g.**, *United States v. Cole*, 2007 WL 2714111, slip op. (S.D. Ill. Sept. 27, 2007) (relying on *Muzio* in dismissing indictment where defendant had traveled and failed to register during the "gap" period between SORNA's enactment and the interim rule); *United States v. Deese*, 2007 WL 2778362, slip op. (W.D. Okla. Sept. 21, 2007) (prosecution under 18 U.S.C. § 2250 based on interstate travel occurring prior to SORNA violated *Ex Post Facto* Clause); *United States v. Stinson*, ___ F. Supp. 2d ___, 2007 WL 2580464 (S.D. W. Va. Sept. 7, 2007) (*Ex Post Facto* Clause prevented defendant's conviction under SORNA where defendant's interstate travel occurred before interim rule); *United States v. Sallee*, No. CR-07-152-L (W.D. Okla. Aug. 13, 2007) (defendant's travel occurred prior to SORNA's enactment); *United States v. Smith*, 481 F. Supp. 2d 846 (E.D. Mich. 2007) (same); *United States v. Heriot*, 2007 WL 2199516, slip op. (D.S.C. July 27, 2007) (same, and holding SORNA did not apply to defendant until issuance of interim rule); *United States v. Muzio*, 2007 WL 2159462, slip op. at *5 (E.D. Mo. July 26, 2007) (application of SORNA is "a classic Ex Post Facto Clause violation" as to defendants convicted prior to SORNA who travel in interstate commerce before issuance of the interim rule); *and United States v. Kapp*, 487 F. Supp. 2d 536 (M.D. Pa. 2007) (same); **with** *United States v. Kelton*, 2007 WL 2572204, slip op. (M.D. Fla. Sept. 5, 2007) (rejecting *ex post facto* argument without analysis, relying on holdings in *United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007); *United States v. Madera*, 474 F. Supp. 2d 1257 (M.D. Fla. 2007); *United States v. Hulen*, 2007 WL

24

2343884, slip op. (W.D. Ark. Aug. 15, 2007); *United States v. Sawn*, 2007 WL 2344980, slip op. (W.D. Va. Aug. 15, 2007); *United States v. Gonzales*, 2007 WL 2298004, slip op. (N.D. Fla. Aug. 9, 2007); *United States v. Mason*, ___ F. Supp. 2d ___, 2007 WL 1521515, slip op. (M.D. Fla. May 22, 2007); *United States v. Templeton*, 2007 WL 445481, slip op. (W.D. Okla. Feb. 7, 2007); and *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003)).

The court finds that even if SORNA became applicable to Howell on the date of its enactment (a hypothetical contrary to the court's finding, above), application of the statute to Howell's conduct predating the interim rule nevertheless would constitute an unconstitutional *ex post facto* application of the law. Both elements of the *ex post facto* analysis set forth by the *Weaver* Court are present here. First, the law applies to conduct occurring prior to promulgation of the interim rule; i.e., Howell's travel from Michigan to Iowa, and his failure to register and keep his registration current prior to February 28, 2007. Second, the law disadvantages Howell. The Government claims Howell is arguing 18 U.S.C. § 2250 "raise[s] the penalty for his previous conviction." Doc. No. 22-2 at 13. The Government misses the point. The penalty provision of SORNA in section 2250 does not change the penalty for Howell's previous sexual offense conviction. Rather, it dramatically increases the penalty for his interstate travel and failure to register and keep his registration current as required by SORNA.

Under pre-SORNA law in Iowa, Howell's failure to register in Iowa as a sex offender would be punishable as a serious misdemeanor for a first offense, carrying a maximum jail sentence of one year, and a class "D" felony for a second or subsequent offense, carrying a maximum sentence of imprisonment of five years.[6] Iowa Code § 692A.7(1). Under SORNA's penalty provision, Howell's failure to register and update his registration as required could subject him to imprisonment for up to ten years. 18

---

[6]The court has omitted discussion of applicable fines.

U.S.C. § 2250(a). Thus, SORNA's penalty provision increases the punishment for the crime, disadvantaging Howell.[7] *See Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 896, 137 L. Ed. 2d 63 (1997). What is particularly troubling about application of SORNA to conduct pre-dating the interim rule is the lack of "fair warning" to individuals like Howell that the Act would apply to them. *See Weaver*, 450 U.S. at 28-29, 101 S. Ct. at 964. A reasonable reading of SORNA would lead to the conclusion that until the Attorney General specified the applicability of the statute to pre-SORNA sex offenders, the Act's requirements did not apply to such individuals.

However, once again, any *ex post facto* violation can be remedied by a bill of particulars, and/or by limiting the Government's proof to Howell's conduct that occurred after issuance of the interim rule. *See* the discussion *supra* at pages 21-22. Therefore, dismissal of Count 1 is not the proper remedy.

### 3.  *Non-Delegation Doctrine Challenge*

Howell argues that if the court holds the interim rule extends to SORNA's penalty provision in 18 U.S.C. § 2250, then "the result would be a violation of the non-delegation doctrine, rendering the statute unconstitutional." Doc. No. 18-2 at 12. Howell asserts "the effect of this delegation of authority would be to permit the Attorney General to legislate the scope of the Act's retrospective reach." *Id.*

The Eighth Circuit Court of Appeals discussed what constitutes an unlawful delegation of legislative power in *South Dakota v. United States Department of Interior*,

---

[7]Because Howell has two prior convictions for violating Michigan's Sex Offender Registration Act, it appears that Howell's failure to update his registration as required by Michigan law could subject him to imprisonment for up to ten years. *See* Mich. Comp. Laws § 28.729(1)(c) (prescribing penalties); Mich. Comp. Laws § 28.725(4) (requiring notification to State at least ten days prior to changing domicile or residence to another state). Thus, it appears the penalty under SORNA is comparable to the penalty under Michigan law.

26

423 F.3d 790 (8th Cir. 2005). The court's discussion, portions of which are set forth below, is directly applicable to Howell's challenge in the present case:

> Congress may delegate its legislative power if it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 294, 409, 48 S. Ct. 348, 72 L. Ed. 624 (1928). The Supreme Court has given Congress wide latitude in meeting the intelligible principle requirement, recognizing that "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United States*, 488 U.S. 361, 372, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989).

> The Supreme Court has struck down statutes on delegation grounds on only two occasions. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S. Ct. 241, 79 L. Ed. 446 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S. Ct. 837, 79 L. Ed. 1570 (1935). The statutes at issue in those cases were promulgated in a unique political climate and delegated to the President exceptionally broad control over the national economy. . . .

> Since 1935, however, the Court has given "narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional." *Mistretta*, 488 U.S. at 373 n.7, 109 S. Ct. 647. The Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-75, 121 S. Ct. 903, 149 L. Ed. 2d 1 (2001) (quotation omitted). . . .

> Congress fails to give sufficient guidance in its delegations only if it "would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed." *Yakus v United States*, 321 U.S. 414, 426, 64 S. Ct. 660, 88 L. Ed. 834 (1944). Its will is sufficiently articulated "if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power*, 329 U.S. at 105, 67 S. Ct.

Case 6:07-cr-02013-MWB   Document 28   Filed 11/08/07   Page 27 of 38

> 133. The statute does not have to provide a "determinate
> criterion" for the exercise of the delegated power, as long as
> a policy is articulated. *Whitman*, 531 U.S. at 475, 121 S. Ct.
> 903.

*South Dakota*, 423 F.3d at 795-96.

In the case of SORNA, Congress clearly stated, in 42 U.S.C. § 16913(d), the "intelligible principle" to which the Attorney General was directed to conform. The interim rule specifically follows the congressional mandate; the rule does not contain extraneous pronouncements beyond specifying the class of sex offenders to which SORNA applies. Notably, Howell has cited no decision in which a court has found SORNA to be an unconstitutional delegation of legislative power, and the court has located none. On the contrary, every court that has considered the argument to date has rejected it. *See United States v. Ambert*, 2007 WL 2949476, slip op. at *7 (N.D. Fla. Oct. 10, 2007); *United States v. Lovejoy*, ___ F. Supp. 2d ___, 2007 WL 2812681 at *3 (D.N.D. Sept. 28, 2007); *United States v. May*, 2007 WL 2790388, slip op. at *5-6 (S.D. Iowa Sept. 24, 2007); *United States v. Gonzales*, 2007 WL 2298004, slip op. at *9 (N.D. Fla. Aug. 9, 2007); *United States v. Mason*, ___ F. Supp. 2d ___, 2007 WL 1521515, slip op. at *3 (M.D. Fla. May 22, 2007); *United States v. Hinen*, 487 F. Supp. 2d 747, 751-53 (W.D. Va. 2007); *United States v. Madera*, 474 F. Supp. 2d 1257, 1261-62 (M.D. Fla. 2007).

The undersigned finds Congress's delegation of authority to the Attorney General in 42 U.S.C. § 16913(d) is not a violation of the nondelegation doctrine and rejects this argument as grounds for dismissal.

### 4. *Due Process Challenge*

Howell argues application of SORNA's penalty provision to him would violate "the fundamental due process principles of notice and fair warning." Doc. No. 18-2 at 14. *See* U.S. Const. amend. V. Howell relies on *Lambert v. California*, 355 U.S. 225, 78 S. Ct.

Case 6:07-cr-02013-MWB   Document 28   Filed 11/08/07   Page 28 of 38

240, 2 L. Ed. 2d 228 (1958), for the proposition that because he failed to receive constitutional notice of SORNA's requirements, he cannot be prosecuted for failing to comply with them. He asserts the Attorney General still has not complied with the mandate of 42 U.S.C. § 16917, by prescribing rules for notice to pre-SORNA sex offenders of SORNA's registration requirements, and he argues that to require him "to comply with non-existent regulations and statutes would be to require him to do something that is impossible." Doc. No. 18-2 at 14-15. Howell further argues that because SORNA's registration requirements differ from, and in some ways are more demanding than, existing state registration requirements, the fact that he was aware of his registration obligations under Michigan law "is not a substitute for knowledge of the requirements of SORNA." *Id.* at 15. Because 18 U.S.C. § 2250 requires proof that he "knowingly" failed to comply with SORNA's registration requirements, Howell argues his lack of notice excuses his failure to comply with those requirements. *See id.* at 14-15.

The Government asserts Howell's argument amounts to a claim "that ignorance of the law excuses non-compliance." Doc. No. 22-2 at 18. The Government notes Howell was aware of his obligation to register in Michigan, and his obligation to notify Michigan authorities when he changed his residence to another state. The Government further argues Howell's knowledge that he was supposed to register when he moved to Iowa is illustrated by Howell's representation to law enforcement on May 24, 2007, that he was registered in several other states. *Id.* at 17. The Government relies on recent cases in which courts have rejected the same due process argument Howell asserts here. *See id.* at 17-18, citing *Ambert*, *May*, *Hinen*, *Madera*, *Roberts*, and *Manning*, *supra*.

In *Lambert*, the Supreme Court examined a Los Angeles, California, felon registration ordinance. Assuming, for purposes of its examination of the ordinance, that the appellant had no actual knowledge of her obligation to register under the ordinance, the Court held:

Case 6:07-cr-02013-MWB    Document 28    Filed 11/08/07    Page 29 of 38

> Where a person did not know of the duty to register and where
> there was no proof of the probability of such knowledge, he
> may not be convicted consistently with due process. Were it
> otherwise, the evil would be as great as it is when the law is
> written in print too fine to read or in a language foreign to the
> community.

*Lambert*, 355 U.S. at 229-30, 78 S. Ct. at 243-44. In reaching this result, the Court noted, that "[e]ngrained in our concept of due process is the requirement of notice. . . . Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act." *Id.*, 355 U.S. at 228, 78 S. Ct. at 243. The Court observed that this "principle is equally appropriate where a person, wholly passive *and unaware of any wrongdoing*, is brought to the bar of justice for condemnation in a criminal case." *Id.* (emphasis added).

Given Howell's previous registration in Michigan, and his knowledge that he was at least violating Michigan law when he failed to update his registration as required when he moved to Iowa, Howell cannot reasonably argue he was "unaware of any wrongdoing." As the Eighth Circuit Court of Appeals noted in *United States v. Hutzell*, 217 F.3d 966 (8th Cir. 2000), "The *Lambert* principle applies . . . only to prohibitions on activities that are not *per se* blameworthy." *Id.* at 968 (citations omitted). Howell's failure to update his registration when he moved to Iowa was *per se* blameworthy, making *Lambert* inapplicable to him, and he cannot rely on *Lambert*'s exception to the long-standing rule that "ignorance of the law is no excuse." *Id.*

The court finds application of SORNA's penalty provision to Howell does not violate due process.[8]

---

[8]This conclusion is not in conflict with the court's holding, *supra*, that application of 18 U.S.C. § 2250 to Howell would violate the *Ex Post Facto* Clause – a conclusion based on a different standard.

Case 6:07-cr-02013-MWB   Document 28   Filed 11/08/07   Page 30 of 38

## 5.  Commerce Clause Challenge

Howell argues both Count 1 and Count 2 of the Superseding Indictment should be dismissed because SORNA's registration requirements and criminal provision "are impermissible exercises of congressional authority and cannot be justified under the Commerce Clause." Doc. No. 18-2 at 15.  Addressing SORNA's registration requirements first, Howell notes the statute contains no jurisdictional element that requires a sex offender to travel in interstate commerce.  Rather, he argues, SORNA's "registration requirements apply to citizens whose activities are purely intrastate, and who may never travel across a state line." *Id.* at 17-18.

Howell relies on the Supreme Court's examination of Congress's powers under the Commerce Clause in *United States v. Lopez*, 514 U.S. 549, 566, 115 S. Ct. 1624, 1633, 131 L. Ed. 2d 626 (1995).  In *Lopez*, the Court "concluded Congress may validly regulate three broad categories of activities: (1) the use of the channels of interstate commerce; (2) protection of the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce." *United States v. May*, 2007 WL 2790388, slip op. at *7 (S.D. Iowa Sept. 24, 2007) (citing *Lopez*, 514 U.S. at 558-59, 115 S. Ct. at 1629-30).  Howell argues SORNA's registration requirements fail to fall within any of the three categories of activities, thus exceeding congressional authority under the Commerce Clause. *See generally* Doc. No. 18-2 at 15-20.

Addressing 18 U.S.C. § 2250, Howell argues the provision is an impermissible attempt on Congress's part to exercise police power.  Howell argues section 2250 also does not fall into any of the three *Lopez* categories.

Howell acknowledges that to date, every court that has examined this issue has found no violation of the Commerce Clause.  Doc. No. 18-2 at 21 (citing *Madera*, *Templeton*, *Mason*, and *Hinen*, *supra*).  However, Howell argues none of these courts has "engage[d] in the difficult but necessary analysis required under United States Supreme

31

Court precedent in determining whether a statute is a valid exercise of Congressional authority under the Commerce Clause." *Id.* at 21-22.

Howell attempts to have the court consider SORNA piecemeal, looking at the registration requirements and the criminal penalty provision separately. Howell's argument fails to consider the integrated nature of SORNA. In considering whether a statute is constitutional, "the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S. Ct. 1811, 1817, 100 L. Ed. 2d 313 (1988) (citations omitted). "It is a basic rule of statutory interpretation that in determining its meaning, a statute shall be considered in its entirety[,]" *Northwest Paper Co. v. Federal Power Comm'n*, 344 F.2d 47, 50 (8th Cir. 1965) (citations omitted). *Cf. Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 168, 95 S. Ct. 335, 370, 42 L. Ed. 2d 320 (1974) ("Statutory interpretation requires more than concentration upon isolated words. . . .").

As the Eighth Circuit Court of Appeals observed in *Premachandra v. Mitts*, 727 F.2d 717 (8th Cir. 1984), "'All statutes must be given sensible construction. The sole object of construction is to determine the legislative intent.'" *Id.* at 727 (quoting *Lambur v. Yates*, 148 F.2d 137, 139 (8th Cir. 1945)). In this case, Congress expressed its intent clearly; SORNA was enacted to "establish[] a comprehensive national system for the registration of [sex offenders and offenders against children]." 42 U.S.C. § 16901. The Act's purpose was protection of the public from sex offenders by tracking these offenders as they move between the states. The registration requirements and criminal penalties are part of a single Act designed to further this purpose. The Act as a whole includes the requisite nexus between the jurisdictional element of travel in interstate commerce, and the offense of failing to register after having so traveled.

This court concurs with every other court that has considered a Commerce Clause challenge to SORNA in concluding "[t]he ability to track sex offenders as they move from

state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause." *United States v. Madera*, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007); *accord Templeton*, 2007 WL 4454881 at *3-*4; *Hinen*, 487 F. Supp. 2d at 757-58; *Mason*, 2007 WL 1521515 at *6; *May*, 2007 WL 2790388 at *7.

### 6.    Proper Venue for Count 2

Howell argues venue is improper in this court as to Count 2, which charges Howell with knowingly failing to register as required under SORNA "[b]etween about June 6, 2007 and about July 13, 2007." Doc. No. 12. The parties agree that Howell registered in Iowa on June 5, 2007, and he was arrested in Texas on July 13, 2007. Howell asserts that even if he had changed his residence to Texas (a fact he does not concede), SORNA required him to update his registration within three business days after changing his residence by appearing in person in at least one jurisdiction where he resided, was employed, or was a student. *See* 42 U.S.C. § 16913(c). He argues, therefore, that if he had changed his residence to Texas, he was not required under SORNA to "appear in person" in Iowa, and Iowa is not the proper venue for the prosecution of Count 2.

Howell further argues venue is improper in this court under 18 U.S.C. § 3237, which permits prosecution in any jurisdiction through which a defendant passes during commission of a crime. Howell argues SORNA requires him to register *after* he traveled in interstate commerce and allegedly changed his residence. He asserts a violation of SORNA is not a continuing offense, but rather is a distinct occurrence that took place, if at all, in a location other than the State of Iowa.

The Government disagrees, arguing failure to register under SORNA "is a continuing offense which may be prosecuted in either the district the defendant moved

33

from or the district to which he moved, where he failed to notify the proper authorities in either jurisdiction[.]"  Doc. No. 22-2 at 23.

The crux of Howell's argument, and the Government's resistance, is the question of whether failure to register under SORNA as required by 18 U.S.C. § 2250 is, or is not, a continuing offense.

In *United States v. Wilson*, 2007 WL 3046290, slip op. (D. Utah Oct. 16, 2007), the court held a violation of SORNA is not a continuing offense.  The court found this to be true under the plain language of 18 U.S.C. § 2250, which provides a penalty if a sex offender "*travels* in interstate or foreign commerce" (emphasis added), and then knowingly fails to register as required by SORNA.  The *Wilson* court found Congress's use of the present tense of the verb "travels," rather than the past tense, to be significant, citing *United States v. Smith*, 481 F. Supp. 2d 846, 850 (E.D. Mich. 2007) ("The Supreme Court has also noted that in the context of criminal laws, 'Congress' use of a verb tense is significant in construing statutes.'") (citation omitted).  The *Wilson* court held:

> This verb choice indicates that Congress intended to punish a sex offender's failure to register *in connection with* the individual's interstate travel.  Because traveling interstate is necessarily an element which can and must be completed in order to prosecute under SORNA, the crime cannot be continuous.  Specifically, Congress did not "'clearly contemplate[] a prolonged course of conduct.'  Rather, the statute contemplates a single act even though there may be continuing effects." *United States v. Dunne*, 324 F.3d 1158, 1165 (10th Cir. 2003) (quoting *Toussie v. United States*, 397 U.S. 112, 120[, 90 S. Ct. 858, 863, 25 L. Ed. 2d 156] (1970)).  Accordingly, Mr. Wilson's failure to register under SORNA cannot qualify as a continuous crime because he completed the second element when he had traveled interstate in order to move to Utah.

*Wilson*, 2007 WL 3046290 at *2.

34

The *Wilson* court further observed that a crime cannot be a continuous offense where the individual cannot be prosecuted separately for each day he fails to register as required. Rather, the court held, the defendant's "crime was completed 'on the 11th day after [he] travel[ed] in interstate commerce from one jurisdiction to another, and fail[ed] to register after 10 days.'" *Id.* (quoting *Smith*, 481 F. Supp. 2d at 852; and citing *Stinson*, 2007 WL 2580464 at *7).

The court in *United States v. Stinson* similarly held that a violation of section 2250 is complete when an individual "travels in interstate commerce and then fails to register within the prescribed time period," with the result that the violation is not a continuing offense. *Id.*, 2007 WL 2580464 at *7. The *Stinson* court noted the U.S. Supreme Court reached a similar conclusion in finding that "a continuing duty to register for the draft did not turn a failure to register into a continuing offense." *Id.* (citing *Toussie v. United States*, 397 U.S. 112, 119, 90 S. Ct. 858, 862, 25 L. Ed. 2d 156 (1970) (Toussie "was allowed a five-day period in which to fulfill the duty [to register], but when he did not do so he then and there committed the crime of failing to register.")).

An analysis of whether a violation of SORNA constitutes a continuing offense is not unlike the analysis performed by the Supreme Court in *Toussie*, a case in which the Court construed the statute of limitations for failure to register for the draft. In *Toussie*, the Court construed the failure to register "as a 'single, instantaneous act to be performed at a given time.'" *United States v. Eklund*, 733 F. 2d 1287, 1296 (8th Cir. 1984) (quoting *Toussie*, 397 U.S. at 117, 90 S. Ct. at 861). The Eighth Circuit summarized the *Toussie* Court's holding as follows:

> The Court noted that an offense should not be construed as a continuing one "unless the explicit language of the criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." 397 U.S. at 115, 90 S. Ct. at 860. The Court also examined this country's admini-

35

stration of its draft laws and concluded that, historically, "registration was thought of as a single, instantaneous act to be performed at a given time, and failure to register at that time was a completed criminal offense." *Id.* at 117, 90 S. Ct. at 861. The Court found that Congress had not expressed its intent that failure to register be a continuing offense, *id.* at 120, 90 S. Ct. at 863, and further determined that the nature of the crime of failing to register did not make it a continuing offense. *Id.* at 122, 90 S. Ct. at 864.

*Id.*

The court finds a similar analysis applies to an individual's failure to register as required by SORNA. An individual is not required to register or update his registration daily after changing his residence. Rather, he is required to perform a single action within ten days; i.e., appearing in the appropriate jurisdiction and updating his registration. *See* 42 U.S.C. § 16913(c). There is no indication in SORNA that Congress intended the offense to be a continuing one. Thus, the court finds, as did the courts in *Wilson* and *Stinson*, that a violation of SORNA is not a continuing offense. *See also Deese*, 2007 WL 2778362 at *3 (rejecting government's argument that failure to register constituted a continuing offense); *Roberts*, 2007 WL 2155750 at *3 (same, reasoning "no crime is committed during the actual trip; it occurs only when a sex offender comes to rest in a new home"). *But see Hinen*, 487 F. Supp. 2d at 759 (relying on several courts' interpretations of violations of the Travel Act, 18 U.S.C. § 1952(a), in holding that "failing to register under SORNA is a continuing offense since it involves an element of interstate or foreign travel").

However, the court's finding that a violation of SORNA is not a continuing offense does not end the inquiry. As the Government notes in its brief, although the court in *Roberts* found a violation of SORNA not to be a continuing offense, the court nevertheless found the defendant could be prosecuted either in the state from which he moved, or in the state to which he moved. The court reasoned that because the defendant failed to re-

36

register in his new state of residence, his previous state of residence "remained his nominal residence according to the sex offender registries." The court therefore held the former state of residence "was 'involved' in the sense used by SORNA," with the result that venue was proper in either state. *Roberts*, 2007 WL 2155750 at *3.

The courts that have examined the issue have focused on SORNA's requirement that a sex offender appear in person and update his registration in his new state of residence, to which he traveled in interstate commerce. However, in instead of requiring only that such a person appear in his state of residence, SORNA also would allow a sex offender to appear and update his registration in the jurisdiction in which he is an employee or a student. *See* 42 U.S.C. § 16913(c). Consequently, it would appear that no blanket rule can establish what constitutes proper venue in all cases; rather, the question of proper venue will be fact-specific, to be considered on a case-by-case basis.

In the present case, for example, the Government alleges in its brief that Howell told the officers that he was an over-the-road truck driver, and that he actually lived in Texas. However, despite these allegations, the evidence that would establish venue is not part of the record at this juncture. Indeed, "[p]roof of venue is an essential element of the Government's case . . . [which must be] proved by a preponderance of the evidence." *United States v. Netz*, 758 F.2d 1308, 1312 (8th Cir. 1985) (internal quotations, citations omitted). Moreover, "[v]enue is a question of fact which should be submitted to the jury." *United States v. Moeckly*, 769 F.2d 453, 466 (8th Cir. 1985) (citing *United States v. Jackalow*, 1 Black 484, 17 L. Ed. 225 (1862); *United States v. Black Cloud*, 590 F.2d 270 (8th Cir. 1979)).

Thus, Howell's motion to dismiss Count 2 on the basis of improper venue is premature and should be denied at this juncture. Proper venue is an element of the Government's case to be proven at trial.

37

### CONCLUSION

For the reasons discussed above, the undersigned respectfully recommends that Howell's motion to dismiss be denied on all grounds.

Any party who objects to this report and recommendation must serve and file specific, written objections by **November 21, 2007**. Any response to the objections must be served and filed by **November 29, 2007**.

**IT IS SO ORDERED.**

**DATED** this 8th day of November, 2007.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

38